UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| United States of America | * |
| | * |
| v. | * |
| | *   Criminal Action No. 1:24-cr-10060-IT |
| Kirk Wilson, | * |
| | * |
| Defendant. | * |

MEMORANDUM & ORDER

August 27, 2025

TALWANI, D.J.

Defendant Kirk Wilson is charged with being felon in possession of firearm, in violation of 18 U.S.C. § 922(g). Indictment 1 [Doc. No. 1]. This court denied Defendant's motion to suppress the firearm and ammunition seized from his person. Mem. & Order [Doc. No. 57]. Defendant now seeks reconsideration and requests an evidentiary hearing. Def.'s Mot. for Recons. [Doc. No. 82]. For the reasons stated herein, Defendant's Motion [Doc. No. 82] is DENIED.

I.   **Legal Standard**

Although "district courts have the inherent authority to reconsider their interlocutory orders outside the sentencing context," United States v. Bravo-Fernandez, 790 F.3d 41, 61 n.14 (1st Cir. 2015), aff'd, 580 U.S. 5 (2016), a motion for reconsideration is not intended to provide a party with a second bite of the proverbial apple, see Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006). "A district court may grant a motion for reconsideration 'if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust.'" United States v. Cintron, 724 F.3d 32, 36 n.5 (1st Cir. 2013) (quoting United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009)). "The granting of a motion for reconsideration is

'an extraordinary remedy which should be used sparingly.'" Palmer, 465 F.3d at 30 (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995)). "Unless the court has misapprehended some material fact or point of law, such a motion is normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." Id.

"A criminal defendant has no presumptive right to an evidentiary hearing on a motion to suppress." United States v. Cintron, 724 F.3d 32, 36 (1st Cir. 2013) (citing United States v. D'Andrea, 648 F.3d 1, 5 (1st Cir. 2011)). "A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record." United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996) (emphasis added). At a minimum, a defendant must allege facts that are "sufficiently definite, specific, detailed, and non-conjectural, to enable the court to conclude that a substantial claim is presented." United States v. Lewis, 40 F.3d 1325, 1331 (1st Cir. 1994).

## II.   Discussion

Defendant contends that the court improperly resolved certain material factual disputes without holding an evidentiary hearing. First, Defendant argues that "there are several material factual disputes . . . that bear directly on the totality of the circumstances relevant to any determination of whether the 'community caretaking' exception applies[.]" See Mem. ISO Mot. for Recons. 6 [Doc. No. 83]. Defendant argues that an evidentiary hearing should have been conducted to determine: (1) whether Defendant was stopped in the travel lane or along the side of a road; (2) whether only Defendant's parking lights were on, as Defendant claims, or other lights were on; and (3) whether Defendant appeared "dazed and confused" and was "unable to open the window" before the officer opened the car door. Id. at 6-8. Second, as to the decision to frisk, Defendant argues that an evidentiary hearing is necessary to determine whether Sergeant

2

Bussiere had reasonable grounds to believe Defendant was armed and dangerous. See id. at 9. Finally, Defendant argues that an evidentiary hearing is necessary to determine the applicability of the inevitable discovery doctrine. See id. at 10.

But Defendant's motion fails where the court's analysis of the community caretaking exception did not depend on where the vehicle was parked or which of Defendant's lights were on. Accepting Defendant's version of events—that his vehicle was parked off on the side of a side road, in the middle of the night, with its parking lights on—it is a reasonable exercise of the community caretaking function for "an officer who notices a car on the side of the road [to] approach it and knock on its window." Mem. & Order 6 [Doc. No. 57] (case citations omitted). As explained further below, this permissible exercise of the community caretaking function, on its own, would inevitably result in a search incident to an arrest for driving on a suspended license. And given such a search was inevitable, the remainder of the alleged disputes, which concern actions that took place after the window knocking, all fall aside.

Before turning to the inevitable discovery that followed just from this knock on the window, the court considers briefly Defendant's arguments as to the door opening, the frisk, and the arrest for driving under influence. First, Defendant's statements that he had pulled off the road at 12:30 a.m. to "sleep for awhile," "was awakened by pounding on [his] driver's side window," "did not immediately recognize the person pounding on the window to be a police officer[,]" and "was startled by the pounding on the window," see Wilson Aff. ¶ 1-5 [Doc. No. 45-1], support, rather than contradict, Sergeant Bussiere's observation that "before he opened the car door, Mr. Wilson 'appeared to be dazed and confused' and was 'unable to open the window.'" Mem. ISO Mot. for Recons. 8 [Doc. No. 83]. As Defendant previously argued, "the evidence . . . suggests Defendant was dozing when officers approached the vehicle, and his

3

grogginess was at least in part due to being suddenly awakened by the police on a dark road[.]" Mem. ISO Mot. to Suppress 4 [Doc. No. 46]. Whether Defendant was in fact "dazed and confused" or merely "grogg[y] . . . due to being suddenly awakened" and whether Defendant did not recognize the officer is immaterial.

Similarly, while Defendant objects to the court finding that he was "unable to open the window[,]" see Mem. & Order 6 [Doc. No. 57], he makes no claim that he was able to open the window or even that he was trying to open the window. His Affidavit [Doc. No. 45-1] is silent on the issue. Defendant further notes that in cases cited by this court concerning whether the opening of a car door was a proper exercise of the community caretaking function, courts held evidentiary hearings prior to reaching their decisions. Mem. ISO Mot. for Recons. 5 [Doc. No. 83] (citing Mem. & Order 6 [Doc. No. 57]). But as noted above, a hearing is required only upon a showing that material facts are in doubt or dispute and "such facts cannot reliably be resolved on a paper record." United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996).

Defendant also suggests that there was a material factual dispute as to whether Defendant repeatedly failed to comply with orders from Sergeant Bussiere to stop reaching towards his jacket pocket before he was frisked. See Mem. ISO Mot. for Recons. 9 [Doc. No. 83]. But Defendant's account that "the officer asked [Defendant] repeatedly for [his] license and registration" and that Defendant "was reaching inside [his] pocket for [his] identification and was attempting to comply with [the officer's] requests for identification," see Wilson Aff. ¶ 6 [Doc. No. 45-1]; see also id. ¶ 7, does not create a factual dispute, where Defendant has confirmed that he was reaching in his pocket and has not contradicted the officer's statement that, after asking Defendant for his license and registration, the officer also told him to stop reaching into his pockets. Defendant argues further that "the Court's conclusion that the

4

[inevitable discovery] doctrine applies in this case is rooted in part upon important disputed issues of fact—namely that 'the car was parked close to the highway exit ramp' and that 'the car's headlights were on, suggesting that Defendant had not been parked for an extended length of time.'" Mem. ISO Mot. for Recons. 10 [Doc. No. 83] (quoting Mem. & Order 11 [Doc. No. 57]). The court's finding that the Defendant had been driving recently (and that there was probable cause for the OUI arrest) did not depend on whether it was Defendant's headlights or parking lights that were illuminated or whether Defendant, when pulling off the highway to rest, had parked on a small side street off King Street or on the side of King Street itself.

But ultimately, even if there was some material dispute about the opening of the door, the decision to frisk, or the arrest for driving under the influence, once the officer stopped to check on the parked vehicle and knocked on the car window, the arrest and discovery of the firearm and ammunition would have inevitably followed where Defendant was driving on a suspended license.

Evidence that "would inevitably have been discovered without reference to the police error or misconduct" may be admitted at trial under the inevitable discovery doctrine. United States v. Hughes, 640 F.3d 428, 440 (1st Cir. 2011) (quoting Nix v. Williams, 467 U.S. 431, 448 (1984)). The doctrine articulates that such evidence is admissible "so long as (i) the lawful means of its discovery are independent and would necessarily have been employed, (ii) discovery by that means is in fact inevitable, and (iii) application of the doctrine in a particular case will not sully the prophylaxis of the Fourth Amendment." Id. (quoting United States v. Zapata, 18 F.3d 971, 978 (1st Cir. 1994)).

In this case, the evidence would have been discovered pursuant to a lawful search incident to arrest for driving on a suspended license. As noted, it was lawful under the

5

community caretaking exception for Officer Bussiere to approach Defendant's car and knock on the car window. After doing so, Bussiere requested that the Defendant present his license and registration. Wilson Aff. ¶ 6 [Doc. No. 45-1]; Bussiere's Arrest Report 1, ECF p.4 [Doc. No. 49-2]. This request took place prior to, and was independent of, any subsequent actions taken by Bussiere including the pat frisk. Defendant did not have a license on him, see Supplemental Narrative for Patrol Officer Derek Sorenson 1, ECF p.6 [Doc. No. 49-2] (detailing results of search of Defendant's pockets with no mention of a license), and Bussiere would have discovered that Defendant's license was suspended, Bussiere's Arrest Report 1, ECF p.4 [Doc. No. 49-2] (documenting that a check for Defendant in the registry computer showed that Defendant "had a suspended license out of Maine and no status in Massachusetts."). This discovery would provide Bussiere with sufficient probable cause to arrest Defendant. It is Littleton Police Department policy to search a detainee prior to transporting him. See Littleton Police Department Policy for Transportation of Detainees 5 [Doc. No. 49-5]. Because Bussiere had probable cause to arrest Defendant and on that independent ground a search of his person would necessarily have occurred before transporting him to the police station, the first requirement of the inevitable discovery doctrine is satisfied.

    This search would inevitably result in the discovery of the challenged evidence, satisfying the second prong of the test. Bussiere patted the outside of Defendant's jacket pocket and detected the shape of a firearm. Bussiere's Arrest Report 1, ECF p.4 [Doc. No. 49-2]. Given the firearm was in Defendant's jacket pocket, the government has "demonstrate[d], to a high degree of probability, that the evidence would have been discovered." United States v. Almeida, 434 F.3d 25, 29 (1st Cir. 2006).

Finally, the application of the inevitable discovery doctrine in this case would not "sully the prophylaxis of the Fourth Amendment." United States v. Hughes, 640 F.3d 428, 440 (1st Cir. 2011) (quoting United States v. Zapata, 18 F.3d 971, 979 (1st Cir. 1994)). Defendant contends that "the application of the inevitable discovery doctrine in this case would both provide 'an incentive for police misconduct' and would 'significant[ly] weaken Fourth Amendment protection.'" Mem. ISO Mot. for Recons. 11 [Doc. No. 83] (quoting United States v. Silvestri, 787 F.2d 736, 744 (1st Cir. 1986)). But Defendant advances no explanation as to why application of the inevitable discovery doctrine would incentivize unlawful searches in this case, where the police engaged in community caretaking functions and the evidence would have been discovered pursuant to a lawful search of Defendant's person before transporting him to the police station.

### III.     Conclusion

For the foregoing reasons, Defendant's Motion for Reconsideration [Doc. No. 82] is DENIED.

IT IS SO ORDERED.

August 27, 2025                                    /s/ Indira Talwani
                                                   United States District Judge